FILED
2022 Sep-29  PM 12:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **Y. C. YOUNG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 4:21-cv-625-AMM** |
| | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| **Commissioner,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF DECISION

Plaintiff Y.C. Young brings this action pursuant to the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("benefits"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record, the court **AFFIRMS** the decision of the Commissioner.

## I.    Introduction

On July 27, 2017, Mr. Young filed an application for benefits under Title II of the Act, alleging disability as of July 1, 2016. R. 16, 53–65, 133–36. Mr. Young alleged disability due to high blood pressure and diabetes. R. 53–54. He has past relevant work experience as a maintenance worker and water meter installer. R. 22.

The Social Security Administration ("SSA") denied Mr. Young's application on January 19, 2018. R. 16, 53–68, 70–72. On March 13, 2018, Mr. Young filed a request for a hearing before an Administrative Law Judge ("ALJ"). R. 16, 78–79. That request was granted. R. 80–85. Mr. Young received a hearing before ALJ George W. Merchant on April 24, 2019. R. 16, 28–52. On June 12, 2019, ALJ Merchant issued a decision, finding that Mr. Young was not disabled from July 1, 2016 through the date of his decision. R. 13–23. Mr. Young was sixty-three years old at the time of the ALJ decision. R. 23, 53.

Mr. Young appealed to the Appeals Council, which denied his request for review on February 25, 2020. R. 4–6. After the Appeals Council denied Mr. Young's request for review, R. 4–6, the ALJ's decision became the final decision of the Commissioner and subject to district court review. After being granted an Extension of Time Within Which to Commence a Civil Action, R. 1, on May 4, 2021, Mr. Young sought this court's review of the ALJ's decision. *See* Doc. 1.

## II.    The ALJ's Decision

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. § 404.1520. *First*, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or

profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). Absent such impairment, the claimant may not claim disability. *Id*. *Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity, which refers to the claimant's ability to work despite his impairments. 20 C.F.R. §§ 404.1520(e), 404.1545. In the *fourth* step, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis

proceeds to the *fifth* and final step. 20 C.F.R. § 404.1520(a)(4)(v). In this step, the ALJ must determine whether the claimant is able to perform any other work commensurate with his residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g)(1). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 404.1560(c).

The ALJ determined that Mr. Young would meet the insured status requirements of the Act through December 31, 2021. R. 16, 18. Next, the ALJ found that Mr. Young had not engaged in substantial gainful activity since July 1, 2016, the alleged disability onset date. R. 18. The ALJ decided that Mr. Young had the following severe impairments: obesity and osteoarthritis of the knees. R. 18. The ALJ found that Mr. Young's hypertension, obstructive sleep apnea, diabetes mellitus, right sacroiliac joint dysfunction, and gout were "non-severe" impairments because "[t]here is no evidence that these conditions cause more than minimal functional limitations or restrictions." R. 19. The ALJ found that Mr. Young's lumbar degenerative disc disease is a "non-medically determinable impairment" because "[t]here is no evidence that the condition causes more than minimal functional limitations or restrictions." R. 20. Overall, the ALJ determined that Mr.

4

Young did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" to support a finding of disability. R. 20.

The ALJ found that Mr. Young's "statements and other allegations concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 21. The ALJ found that Mr. Young had the "residual functional capacity to perform medium work." R. 20.

The ALJ enlisted a vocational expert to identify the past relevant work performed by Mr. Young. R. 22. The vocational expert identified: maintenance worker and water meter installer. R. 22. The ALJ determined Mr. Young is "capable of performing past relevant work as a Water Meter Installer." R. 22.

Based on these findings, the ALJ concluded that Mr. Young did not have a disability as defined in the Act, from July 1, 2016 through the date of the decision. R. 16, 23. Mr. Young now challenges that decision.

**III. Factual Record**

The medical records in the record span many years and cover various complaints. However, Mr. Young's arguments in support of disability relate only to his complaints of knee and back problems and resulting symptoms. Doc. 14 at 1. The court's discussion of the medical records will focus on these issues.

Mr. Young presented to the St. Vincent's East Emergency Room on June 21, 2015 with left side back pain. R. 441. The pain, which was located in his upper back especially when lifting his arms, began on June 20, 2015. R. 443–44. Radiology reports indicated: "No acute abnormality of the thoracic spine identified." and "No acute abnormality of the cervical spine identified. Nonspecific straightening the cervical spine. Prominent degenerative disc disease and spondylosis at C5/C6. If there is continued pain or point tenderness, recommend further evaluation with cross sectional imaging." R. 457–58.

Mr. Young was treated by Deerfoot Internal Medicine from December 2015 through April 2017. R. 362–95. On December 9, 2015, Mr. Young presented to Deerfoot Internal Medicine and denied chronic lower back pain. R. 393. On March 9, 2016, Mr. Young presented to Deerfoot Internal Medicine and denied pain in muscles or joints. R. 387. On June 8, 2016, Mr. Young presented to Deerfoot Internal Medicine for a wellness exam. R. 380. He reported low back pain that he described as persistent, fluctuant, and moderate and had been lasting for weeks. R. 380. He had no vertebral bone tenderness, pain with full flexion, and good range of motion. R. 381. He was advised to try a muscle relaxant and call if no improvement. R. 382. On September 8, 2016, Mr. Young presented to Deerfoot Internal Medicine to follow up on diabetes, hypertension, and hypothyroidism, and he also complained of "increasing pain in the knees and low back pain." R. 375. He stated that the pain was

increasing with work because he has to be on his knees and occasionally lift heavy objects. R. 375. Mr. Young did not have joint swelling, but the pain was persistent, fluctuant, and moderate. R. 375. Mr. Young reported the pain had lasted for years but was "increasing recently." R. 375. Mr. Young was referred to orthopedics for further evaluation and treatment advice and prescribed a low dose muscle relaxant. R. 377. In March 2017, Mr. Young denied muscle and joint pain and limited range of motion. R. 366.

Mr. Young presented to St. Vincent's East on March 6, 2017. R. 409. Regarding musculoskeletal symptoms, Mr. Young reported "No change in occasional back pain." R. 409.

Mr. Young was treated by Dr. Jack Zaremba at Grandview Medical Group starting January 19, 2018. R. 695. He reported "no muscle aches, no muscle weakness, no muscle cramps, no arthralgias/joint pain, no back pain, no swelling in the extremities, and no difficulty walking." R. 697. His gait and station were normal. R. 697. On February 2, 2018, Mr. Young reported "no muscle aches, no muscle weakness, no muscle cramps, no arthralgias/joint pain, no back pain, no swelling in the extremities, and no difficulty walking." R. 673. Mr. Young presented on April 4, 2018 with chief complaints of knee pain and back pain, as well as to follow up with his diabetes mellitus. R. 661. The history of present illness notes state: "he has some pain in the knee and back cautiously start him on some Mobic but have

7

orthopedics see him regarding this." R. 662. The records also state that Mr. Young "reports back pain but reports no muscle aches, no muscle weakness, no muscle cramps, no swelling in the extremities, and no difficulty walking; [Mr. Young] has bilateral knee pain and back pain." R. 662 (cleaned up). Dr. Zaremba stated that his gait and station was normal. R. 663. Dr. Zaremba prescribed Mobic, 7.5 mg. R. 663. Dr. Zaremba's records include April 4, 2018 X-rays of Mr. Young's right knee and lumbar spine. R. 568. The right knee X-ray showed the following findings: "No acute fracture or dislocation. Joint spaces are fairly well maintained. No distention of the suprapatellar pouch to suggest a joint effusion." R. 569. The right knee X-ray also showed the following impression: "No acute radiographic abnormality of the right knee." R. 569. The lumbar spine X-ray showed the following findings: "Alignment is normal. There is preservation of vertebral body height without compression fracture. Transverse and spinous processes are intact. Sacroiliac joints are unremarkable. No focal or lytic lesion." R. 570. The lumbar spine X-ray also showed the following impression: "No acute radiographic abnormality of the lumbar spine." R. 570. Dr. Zaremba referred Mr. Young to an orthopedic for back pain. R. 659.

Dr. Gregory Gullung at Alabama Ortho Spine & Sports saw Mr. Young for his orthopedic consultation on April 26, 2018. R. 677. Mr. Young's chief complaint at the time was "pain in the lower back" that "radiates down to the right leg." R. 677.

Mr. Young reported severe, intermittent pain that had been present for two years and difficulty walking. R. 677. Mr. Young described his lower back pain as "progressive increase over last year[,] localized in back" and denied "leg pain/weakness/cramps." R. 677. He described his right knee pain as increasing over the last three to four months. R. 677. Mr. Young said that rest, ice, heat, and narcotics helped the pain. R. 677. Dr. Gullung's medical records include the following:

### Lumbar Examination

**Inspection:** Local inspection shows no step-off or bruising. Lumbar alignment is normal.
**Palpation:** Tenderness around the midline and paraspinal area.
**Range of Motion:** Limitation of lumbar flexion, extension and rotation.
**Strength:** Muscle strength and tone are grossly normal and equal bilaterally.
**Sensation:** Sensation normal to touch bilaterally.
**Reflexes:** Knees and ankles reflexes equal bilaterally.
**Special Tests: Straight leg raise pos left. Waddell's signs negative.**

**Gait:** Gait is grossly abnormal.

. . .

### Right Knee Examination

**Inspection:** Inspection of the knee reveals no swelling or ecchymosis.
**Palpation:** Palpation reveals tenderness along the medial aspect of proximal tibia and adjoining joint line. There is no effusion.
**Range of Motion:** Range of motion 0 to 110 degrees with some pain.

> **Strength:** Muscle strength appears to be grossly normal.
> **Sensation:** Sensation is normal to touch.
> **Reflexes:** Reflexes are equal.
> **Special Tests: Anterior drawer and Lachman are negative. McMurray test is positive.**
>
> **Gait:** Gait is grossly abnormal.

R. 678–79. Dr. Gullung ordered imaging of the right knee and lumbosacral spine. R. 679. The imaging findings were degenerative joint disease of the right knee and lumbar degenerative disc disease and stenosis at L5/S1. R. 679. Dr. Gullung gave Mr. Young an injection in his right knee, recommended physical therapy, and prescribed a Lidoderm path and Robaxin. R. 679. Mr. Young was to return in six weeks to follow up. R. 679.

Mr. Young returned to Dr. Gullung on June 7, 2018. R. 712. Mr. Young reported no change in his moderate to severe pain and that he had not gone to physical therapy because it was not covered by insurance. R. 712. Mr. Young reported that his back pain was worse than his knee pain, he was having issues with walking long periods, he was falling, and he was unable to take stairs. R. 712. Mr. Young described the pain as "aching and constant. Additional symptoms include difficulty walking, pain, radiation of pain on the involved side, sleep disturbances, stiffness and ROM limitation. . . . Symptoms are made worse with activity, with twisting/turning, when climbing stairs and while walking." R. 712. Dr. Gullung's medical records include the following:

**Lumbar Examination**

**Inspection:** Local inspection shows no step-off or bruising. Lumbar alignment is normal.
**Palpation:** Tenderness around the midline and paraspinal area.
**Range of Motion:** Limitation of lumbar flexion, extension and rotation.
**Strength:** 4/5 right ehl gs ta ham quad otherwise 5/5
**Sensation:** Sensation normal to touch bilaterally.
**Reflexes:** Knees and ankles reflexes equal bilaterally.
**Special Tests: Straight leg raise negative. Waddell's signs negative.**

**Gait:** Gait is grossly abnormal, guarded

R. 714. Mr. Young was provided with a home exercise program and advised to follow up in six weeks. R. 714.

Mr. Young returned to Dr. Gullung on August 2, 2018, to follow up after six weeks of a home exercise program. R. 715. He reported moderate back pain that was "improved," but continued to experience lower back and bilateral knee pain. R. 715. Dr. Gullung's records indicate: "The[re] has been significant improvement in the symptoms since the last visit. He describes the symptoms as aching and constant. Additional symptoms include pain, radiation of pain on the involved side, stiffness and ROM limitation. [] Symptoms are made worse with activity, with twisting/turning, when climbing stairs and while walking." R. 715. Dr. Gullung noted that Mr. Young was doing well with physical therapy, but still had pain in both knees. R. 715. Dr. Gullung's medical records include the following:

**Lumbar Examination**

**Inspection:** Local inspection shows no step-off or bruising. Lumbar alignment is normal.
**Palpation:** Tenderness around the midline and paraspinal area.
**Range of Motion:** Limitation of lumbar flexion, extension and rotation.
**Strength:** Muscle strength and tone are grossly normal and equal bilaterally.
**Sensation:** Sensation normal to touch bilaterally.
**Reflexes:** Knees and ankles reflexes equal bilaterally.
**Special Tests: Straight leg raise negative. Waddell's signs negative.**

**Gait:** Gait is grossly normal.

. . .

**Right Knee Examination**

**Inspection:** Inspection of the knee reveals no swelling or ecchymosis.
**Palpation:** Palpation reveals tenderness along the medial aspect of proximal tibia and adjoining joint line. There is no effusion.
**Range of Motion:** Range of motion 0 to 110 degrees with some pain.
**Strength:** Muscle strength appears to be grossly normal.
**Sensation:** Sensation is normal to touch.
**Reflexes:** Reflexes are equal.
**Special Tests: Anterior drawer and Lachman are negative.**

**Gait:** Gait pattern is normal with no limp.
. . .

**Left Knee Examination**

**Inspection:** Inspection of the knee reveals no swelling or ecchymosis.
**Palpation:** Palpation reveals tenderness along the medial aspect of proximal tibia and adjoining joint line. There is no effusion.
**Range of Motion:** Range of motion 0 to 110 degrees with some pain.
**Strength:** Muscle strength appears to be grossly normal.
**Sensation:** Sensation is normal to touch.
**Reflexes:** Reflexes are equal.
**Special Tests: Anterior drawer and Lachman are negative.**

**Gait:** Gait pattern is normal with no limp.

R. 715–17. Dr. Gullung ordered imaging of the lumbosacral spine and both knees. R. 717. The imaging showed "lumbar DD" and "tricomapartment arthrosis of B liat knees." R. 717. Dr. Gullung indicated he would refer Mr. Young to Dr. Marshall for a knee evaluation, and advised Mr. Young to return if pain or symptoms arise. R. 717.

Dr. Zaremba's medical records indicate that Mr. Young presented on both August 10, 2018 and August 23, 2018 and his diagnosis of low back pain was discussed. R. 608, 612. It was noted that he was taking 7.5 mg of Mobic for his pain. R. 608, 612. Mr. Young reported "no muscle aches, no muscle weakness, no muscle cramps, no arthralgias/joint pain, no back pain, no swelling in the extremities, and no difficulty walking." R. 686, 688. Also, his gait and station were normal at both August visits. R. 686, 688. Mr. Young presented to Dr. Zaremba on December 26, 2018 and the records indicate his gait and station were normal. R. 683.

Mr. Young was also treated at an endocrinology clinic in 2018 and 2019. At his April 25, 2018 visit, Mr. Young reported "No pain in muscles or joints, no limitation of range of motion, No joint swelling." R. 732. His examination revealed no back tenderness and no joint swelling. R. 735. At his July 26, 2018 visit, Mr. Young denied muscle pain, joint pain, spasm, stiffness and joint swelling, but reported that he had arthralgias and back pain. R. 726. At his February 4, 2019 visit, Mr. Young denied arthralgias, muscle pain, joint pain, spasm, stiffness, and joint swelling. R. 722.

In addition to the medical records, the record also contains records related to Mr. Young's disability determination. Dr. Timothy Parish at Disability Consultants of Alabama completed an exam of Mr. Young on November 14, 2017. R. 418–27. Dr. Parish's exam report stated in part:

> **CHIEF COMPLAINTS:**
> 1. Pain
>     Site: Chronic bilateral knee pain
>     Date of onset: 2005
>     Mode of onset: Insidious
>     Depth: Deep
>     Severity: 5-10/10, on average 7/10
>     Frequency: Continuous w/ exacerbations
>     Character: Aching
>     Progression of pain: gradually worse over the last year
>     Radiation: No
>     Associated paresthesia: No
>     Exacerbating factors: prolonged walking, standing, changes in weather
>     Relieving factors: heat, cold, Narcotics, NSAID

A.M. stiffness: Yes

2. Pain

Site: Chronic lower back pain. History of MRI in 2006, diagnosed as two bulging discs. No epidural. No surgery.
Date of onset: 2006
Mode of onset: Lifting
Depth: Deep
Severity: 4-10/10, on average 6/10
Frequency: Continuous w/ exacerbations
Character: Aching
Progression of pain: gradually worse over the last year
Radiation: Yes, from lower back down both posterior legs to the feet
Associated paresthesia: Yes
Exacerbating factors: prolonged walking
Relieving factors: narcotics, NSAID, lying in bed
A.M. stiffness: Yes

. . . .

## SYSTEMS:

1. Exercise tolerance at one time without interruption
   A) Without assistive device
      i.)   Walking on a flat surface—claimant is able to walk 1 block, 300 ft.
      ii.)   Ascending steps—claimant is able to climb 1–5 steps.
      iii.)   Standing: able to stand without assistive device for 5 minutes.
      iv.)   Sitting: able to sit for unlimited time.
   A) With Assistive device— (Type:) CANE in right hand
      v.)   Walking on a flat surface—claimant is able to walk ¼ mile.
      vi.)   Ascending steps—claimant is able to climb 1 flight.

vii.) Standing: able to stand with assistive
device for 10 minutes.
viii.) Sitting: able to sit for unlimited time.

  2. Limited by: back and knee pain

. . . .

Claimant last worked in July 2016 at Birmingham Water
as a Service Technician. He stopped working due to
bilateral knee pain and back pain.

R. 418–20. Dr. Parish also noted that Mr. Young had antalgic gait, normal station,

normal muscle tone, and normal muscle power. R. 422–24. He had positive straight

leg raising. R. 424. Mr. Young reported tenderness in the midline L-spine, midline

S-spine, right SI joint, paravertebral L-spine. R. 426. Mr. Young reported knee joint

line tenderness medial, lateral, posterior, and anterior. R. 426. Dr. Parish diagnosed

Mr. Young with chronic lower back pain (possible radiculopathy – sciatica; possible

degenerative joint disease; bilateral paravertebral lumbar fibromyalgia; and right

sacroiliac joint dysfunction) and chronic bilateral knee pain (probable degenerative

joint disease). R. 427. Dr. Parish also completed knee X-rays. Mr. Young's knee X-

rays were normal, with "no bony, joint or soft tissue abnormality." R. 428–29.

    X-rays completed on December 15, 2017 showed "Mild degenerative

changes" of the lumbosacral spine. R. 431. Specifically, the "[v]ertebral height and

alignment are well-maintained. There is mild interspace narrowing fairly diffusely.

No fracture identified." R. 431.

Mr. Young completed a Work History Report. R. 152–57. He listed his job title at Birmingham Water Works as "service tech" from 1984 through 2016. R. 152. He described his job as: "drove trucks, repair water main, fix meters." R. 153. He stated that he spent one total hour per day doing each of the following: walking, standing, sitting, climbing, stooping, kneeling, crouching, crawling, handling, reaching, and writing/typing/or handling small objects. R. 153. He stated he frequently lifted fifty pounds or more. R. 153.

Mr. Young also underwent a Comprehensive Psychological Evaluation completed by Dr. William Beidleman on December 16, 2017. R. 433–35. Regarding Mr. Young's daily activities, the evaluation stated that Mr. Young fishes and socializes with friends. R. 434. Dr. Beidleman wrote: "When asked about daily activities, he answered, 'Fish quite often, watch television, sitting around, mow grass or see my grandchildren.' He states that he goes to church weekly. He does not appear to have significant problems in performing daily activities. . . . He appears able to function independently at a reasonable level." R. 434.

Mr. Young also completed an Adult Disability Report. R. 159–66. In it, he stated that his high blood pressure and diabetes were the physical conditions that limited his ability to work. R. 160. Mr. Young completed the job history section consistently with his responses to the Work History Report. R. 161–62.

Mr. Young also completed an Adult Function Report. R. 169–76. Mr. Young listed mowing the lawn as an outdoor chore he completed "if [he was] feeling well," though "some time my blood pressure is high and [he] c[ould]n't do it." R. 170. He reported having no problems with personal care, but reported having difficulties with lifting, squatting, bending, standing, walking, kneeling, talking, hearing, stair climbing, seeing, and memory. R. 172–73. Mr. Young also reported fishing, going to church, and going to the community center. R. 175.

## IV.   Standard of Review

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Act mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. § 405(g). This court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the record as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. No decision is automatic, for "[d]espite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## V.   Discussion

Mr. Young alleges that the ALJ's decision should be reversed and remanded because: (1) the ALJ improperly relied on Mr. Young's daily activities in finding he was not disabled and could perform his past, medium work; (2) the ALJ erred in finding Mr. Young could perform his past work; and (3) the residual functional capacity is not supported by substantial evidence. Doc. 14 at 2.

### A. The ALJ's Evaluation of Daily Activities

A claimant's subjective complaints are insufficient to establish a disability. *See* 20 C.F.R. § 404.1529(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a claimant claims disability due to pain or other subjective symptoms. The claimant must show evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. § 404.1529(a), (b); Social Security Ruling 16-3p, 2017 WL 5180304, at *3-*4 (Oct. 25, 2017) ("SSR 16-3p"); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of a claimant's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. § 404.1529(c); *Wilson*, 284 F.3d at 1225-26. In evaluating the extent to which a claimant's symptoms affect his capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of a claimant's symptoms, (3) the claimant's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for

relief of symptoms, (7) any measures the claimant takes to relieve symptoms, and (8) any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. § 404.1529(c)(3), (4); SSR 16-3p at *4, *7-*8. To discredit a claimant's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210.

An ALJ's review "must take into account and evaluate the record as a whole." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). There is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision. *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016). Instead, the ALJ must consider the medical evidence as a whole and not broadly reject the evidence in the record. *Id.*

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *see Hand v. Heckler*, 761 F.2d 1545, 1548-49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom., Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. *See Ortega v. Chater*, 933 F. Supp. 1071, 1076 (S.D.F.L. 1996) (holding that the ALJ's failure to articulate adequate reasons for only partially crediting the plaintiff's complaints of pain resulted in reversal).

21

"The question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Mr. Young argues that the ALJ erred when he relied on Mr. Young's daily activities "in finding that [Mr. Young] could perform past work and medium work." Doc. 14 at 10.

After delineating the pain standard, the ALJ noted that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." R. 20. When describing Mr. Young's symptoms, the ALJ wrote:

> At the hearing, [Mr. Young] testified that due to his impairments, he was limited to sitting no more than 6 hours per day, and standing and walking for no more than about an hour. He said he had severe pain in his knees and back. He said he had been using a cane for about a year, and that it helped with balance. He said he had gout flares every four or five months, and he took medication when it flared. He said that overall, he no longer had the strength to do the things he once did. He said CPAP machine helped with sleep apnea, but he sometimes needed extra rest during the day.

R. 21. Along with his consideration of the record medical evidence and hearing testimony, the ALJ considered Mr. Young's daily activities when making his

credibility determination. R. 21. The ALJ described his assessment of Mr. Young's daily activities as follows:

> The undersigned also points out that [Mr. Young's] retained abilities are not wholly supportive of a finding of "disabled." For example, by his testimony and elsewhere in the record (Exhibits 5E, 6F), [Mr. Young] is functionally independent in all his activities of daily living – including personal care, meal preparation, and driving. In addition, he shops, handles finances, fishes, watches television, socializes with others, attends church regularly, and mows his lawn.

R. 21.

The controlling regulations specifically list daily activities as a factor to consider in evaluating a claimant's credibility regarding his symptoms. 20 CFR § 404.1529(c)(3)(i). Additionally, an ALJ is entitled to consider a claimant's daily activities at Step Four, as he did here. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987).

The ALJ's finding that Mr. Young's daily activities were inconsistent with his allegations of total disability is supported by substantial evidence. As the ALJ noted, the medical evidence, the Adult Function Report, and the Comprehensive Psychological Evaluation indicate a level of activity that reasonably supports the ALJ's residual functional capacity of medium work. R. 169–76, 433–35; *supra* Section III (discussing Adult Function Report and Comprehensive Psychological Evaluation). Additionally, the ALJ did not solely rely on daily activities in his credibility determination; the discussion of daily activities was only one paragraph

of his longer residual functional capacity analysis. R. 20–22. The ALJ also observed that "no treating, examining, or reviewing doctor has indicated that [Mr. Young] was disabled or otherwise unable to perform work related activities. . . . Physically, osteoarthritis of the knees does not significantly limit [Mr. Young's] functional status, and as Dr. Gullung reported, [Mr. Young] had a normal gait pattern with no limp. In addition, [Mr. Young's] records confirm normal strength, normal imaging results, and normal neurological findings." R. 21. Substantial evidence supports the ALJ's credibility determination, including his discussion of Mr. Young's daily activities.

### B. The ALJ's Evaluation of Past Work

In the *fourth* step of the sequential determination process, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. The claimant bears the burden of proving he cannot perform his past relevant work either as he performed the job or as the job is generally performed in the national economy. *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991); *Jackson v. Bowen*, 801 F.2d 1291, 1293–94 (11th Cir. 1986) (holding that "a claimant must demonstrate an inability to return to the previous type of work he was engaged in"); *see also* SSR 82-61 and SSR 82-62.

"[T]he ALJ must consider all the duties" of past work and evaluate a claimant's "ability to perform them in spite of [his] impairments." *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990). The Commissioner "has an obligation to develop a full and fair record" regarding past relevant work. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987); *Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir. 1986) ("In the absence of evidence of the physical requirements and demands of appellant's work the ALJ could not properly determine that []he retained the residual functional capacity to perform it.").

Social Security Ruling 82-61 acknowledges that there may be a difference between a job as performed by the claimant and a job as performed in the national economy:

> A former job performed . . . by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

SSR 82-61.

Social Security Rule 82-62 specifies the findings of fact required to find "that an individual has the capacity to perform a past relevant job": "1. A finding of fact as to the individual's [residual functional capacity]. 2. A finding of fact as to the

physical and mental demands of the past job/occupation. 3. A finding of fact that the individual's [residual functional capacity] would permit a return to his or her past job or occupation."

Mr. Young argues that the finding that he can perform past work is not supported by substantial evidence and "[t]he ALJ did not consider all of the duties of [Mr. Young's] past work and evaluate [Mr. Young's] ability to perform those duties in spite of the impairments." Doc. 14 at 13.

Here, the ALJ clearly and thoroughly developed Mr. Young's residual functional capacity to perform medium work. R. 20–22. Then the ALJ determined that Mr. Young "is capable of performing past relevant work as a Water Meter Installer. This work does not require the performance of work-related activities precluded by [Mr. Young's] residual functional capacity (20 CFR 404.1565)." R. 22. The ALJ's decision states: "At the hearing, the undersigned asked the vocational expert to identify the work performed by the claimant in the past fifteen years, at substantial gainful activity levels as determined by the undersigned, indicating the title of the job, the corresponding Dictionary of Occupational Titles code number ("DOT code") of each job, and the skill and exertional level of each job." R. 22 (footnote omitted). The hearing testimony is:

> Q      Mr. Long can you describe Mr. Young's past work for us, sir?

> A     Yes, Your Honor. Well there's a classification in the DOT called maintenance worker municipal, which would cover a lot of his work.
>
> Q     Okay.
>
> A     Which is heavy, skilled work, with an SVP of 5, and that is 899.684-046. And there's also a water meter installer, which I believe he did at the end, and that's medium, with an SVP of 4. It might move into the heavy category the way he described it, but nevertheless, it's DOT is medium.
>
> Q     Okay.
>
> A     And that's 954.564-010.

R. 50–51. The ALJ cited the testimony of the vocational expert, along with the jobs identified in his decision. R. 22. Additionally, the ALJ cited the Work History Report, R. 152–58, Adult Disability Report, F. 159–66, and Birmingham Water Works Job Description, R. 292–93. R. 22. The Work History Report includes Mr. Young's description of the responsibilities of his job and the physical and mental demands of his job. R. 153; *see supra* Section III. The job description includes a section covering the "Physical Demands" of the job. R. 293. The ALJ's decision indicates he took all of this information into consideration at Step Four.

The ALJ concluded that, "[i]n comparing [Mr. Young's] residual functional capacity with the physical and mental demands of his past relevant work, the undersigned finds that [Mr. Young] is able to perform past relevant work of Water Meter Installer as generally performed in the economy." R. 22. The ALJ made all

findings of fact required under SSR 82-62, and considered documentary evidence in the record, vocational expert testimony, and information from the DOT. His decision is supported by substantial evidence.

### C. The ALJ's Development of the Residual Functional Capacity

Social Security Ruling 96-8p ("SSR 96-8p") regulates the ALJ's assessment of a claimant's residual functional capacity. Under SSR 96-8p, the residual functional capacity "assessment must first identify the individual's functional limitations or restrictions and asses his or her work-related abilities on a function-by-function basis." SSR 96-8p at *1, 1996 WL 374184 (July 2, 1996). The ruling specifically mandates a narrative discussion of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id.* at *7. Additionally, in cases where symptoms are alleged, the assessment of a claimant's residual functional capacity must: "Contain a thorough discussion and analysis of the objective medical and other evidence . . . ; Include a resolution of any inconsistencies in the evidence as a whole; and Set forth a logical explanation of the effects of the symptoms . . . on the individual's ability to work." *Id.*

The Eleventh Circuit has held that, even when the ALJ could have been "more specific and explicit" in his findings with respect to a claimant's "functional

limitations and work-related abilities on a function-by-function basis," those findings nonetheless satisfy the requirements of SSR 96-8p if the ALJ considered all of the evidence. *Freeman v. Barnhart*, 220 F. App'x 957, 959-60 (11th Cir. 2007); *see also Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (an ALJ's finding is sufficiently detailed despite lacking an express discussion of every function if there is substantial evidence supporting the ALJ's residual functional capacity assessment). In addition, the ALJ is not required to "specifically refer to every piece of evidence in his decision," so long as the decision is sufficient to allow the court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

Mr. Young *first* argues that although "the ALJ summarized the medical evidence, the [residual functional capacity] assessment is simply conclusory and does not contain any rationale or reference to the supporting evidence, as required by SSR 96-8p." Doc. 14 at 21. *Second*, Mr. Young argues that the "ALJ omitted any limitations caused by severe pain." *Id. Third*, Mr. Young argues that the limitations identified by Dr. Timothy Parish "preclude medium work." *Id.* at 26. *Fourth*, Mr. Young argues that the ALJ's residual functional capacity must be based on a medical opinion. *Id.* at 22–23.

Though Mr. Young argues that the ALJ's residual functional capacity was "conclusory and does not contain any rational or reference to supporting evidence,"

that is simply not the case. *See* Doc. 14 at 21. Instead, the ALJ stated that "no treating, examining, or reviewing doctor has indicated that [Mr. Young] was disabled or otherwise unable to perform work related activities. Mentally, [Mr. Young] has no significant mental impairments or mental impairment caused limitation of function. Physically, osteoarthritis of the knees does not significantly limit [Mr. Young's] functional status, and as Dr. Gullung reported, [Mr. Young] had a normal gait pattern with no limp. In addition, [Mr. Young's] records confirm normal strength, normal imaging results, and normal neurological findings." R. 21. And the ALJ discussed the medical opinions in the record and how persuasive he found those opinions in developing Mr. Young's residual functional capacity. R. 21–22. Additionally, the ALJ discussed the medical records at other points in his decision, specifically his determination about Mr. Young's severe impairments, non-severe impairments, and non-medically determinable impairment. R. 18–20. Mr. Young does not argue that those findings were in error, nor does he challenge the ALJ's descriptions of the medical evidence included in those findings.

Although Mr. Young argues that the ALJ erred by omitting limitations caused by severe pain, Doc. 14 at 21, as discussed above, the ALJ complied with the Eleventh Circuit's pain standard. *See supra* Section V.A.

Mr. Young appears to argue that the ALJ erred in not discussing Dr. Timothy Parish's report. *See* Doc. 14 at 26; *see also supra* Section III. The court notes that

although Mr. Young characterizes Dr. Parish as a treating physician, *Id.* at 25, the record reflects that he served a consulting role. R. 418–29. Additionally, the ALJ's decision did in fact cite to the exhibit containing Dr. Parish's report. R. 19. When citing that exhibit (Exhibit 4F), the ALJ stated: "Physically, however, his medical history shows obesity and osteoarthritis of the bilateral knees[;]" and "The claimant's record references right sacroiliac joint dysfunction." R. 19. Notably, normal imaging results of both knees are included in Dr. Parish's report. R. 428–29. While the ALJ did not recite the entirety of Dr. Parish's report, he was not required to do so because it is clear that he properly considered Mr. Young's condition as a whole. *See Dyer*, 395 F.3d at 1211. And the portions of the report that Mr. Young continues to highlight are Mr. Young's subjective complaints and diagnoses, they are not a medical source opinion about what Mr. Young could still do and whether he had impairment-related limitations in areas of work-related functioning.

Finally, to the extent Mr. Young challenges the residual functional capacity on the basis that it is not supported by a medical opinion, that argument fails. The ALJ is required to consider any opinions of record in assessing a claimant's residual functional capacity, but it is the ALJ's responsibility to determine the ultimate issue of the claimant's residual functional capacity. 20 C.F.R. §§ 404.1513(b)–(c), 404.1527, 404.1545(a)(1), 404.1546(c). The ALJ specifically considered the evidence of record as summarized it as follows: "no treating, examining, or

reviewing doctor has indicated that [Mr. Young] was disabled or otherwise unable to perform work related activities." R. 21. He also referred to Dr. Gullung's records, noted that Mr. Young "had a normal gait pattern with no limp," and noted that the medical records showed "normal strength, normal imaging results, and normal neurological findings." R. 21. Additionally, the ALJ found "somewhat persuasive" the exertional limitations assessed by State agency medical consultant, Dr. Victoria Hogan. R. 21–22. While the ALJ rejected Dr. Hogan's non-exertional limitations, he did so "because the weight of the evidence includes essentially normal physical examinations and imaging results." R. 21.

Altogether, substantial evidence supports the ALJ's determination that Mr. Young has the residual functional capacity to perform medium work. Accordingly, the ALJ's decision applies the proper legal standards and is supported by substantial evidence, and the ALJ did not err when he concluded that Mr. Young is not disabled.

## VI.   Conclusion

Upon review of the administrative record, the court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** this 29th day of September, 2022.

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE